All right, our last case this morning is United States v. Bost, and we'll hear from the Pounds Council. It's number 24-1719. May it please the court, Jasmine Sola on behalf of Appellant James Bost, I would like to reserve three minutes for rebuttal, which I will be presenting today. That'd be great. Criminal defendants can raise as applied challenges to 922-G1. In Range 2, this court held that 922-G1 is not constitutional in every application, and there it could not be constitutionally applied to Brian Range. Just like Mr. Range can challenge 922-G1 as applied to him, so too can a criminal defendant like Mr. Bost. It is a bedrock principle that when an individual is charged with violating a statute, he can challenge the constitutionality of that statute. He can argue that convicting and punishing him violates the Constitution. That does not depend on whether he is a civil plaintiff or criminal defendant, whether he has previously sought a declaratory judgment, nor whether he has availed himself of a discretionary administrative regime. The Supreme Court nor this court have ever held that a civil plaintiff but not a criminal defendant could challenge the constitutionality of a statute. And this court should not take that unprecedented step today. Instead, this court has correctly held that it will not blindly defer to 922-G1 in its present form. It should take the next logical step and adopt a narrow inquiry for resolving criminal as applied challenges. That inquiry should consider whether an individual's predicate convictions demonstrates physical danger with a firearm. That inquiry should be tethered to the predicate conviction because that is what causes 922-G1 to apply. A predicate-based approach is also faithful to Bruin. It asks, is the challenge regulation analogous to a historical tradition of firearm regulations? Specifically, it asks, is 922-G1's predicate-based prohibition analogous to laws at the founding? And our test is faithful to Range's answer, where a predicate conviction demonstrates physical danger with a firearm that provides a basis for disarmament and falls within the regulatory tradition. Courts assessing this question should consider the elements of the predicate offense, the sentence that was imposed, and the time between the predicate offense and the alleged firearm possession. These are readily ascertainable facts that a court can use to assess physical danger while ensuring due process. By tethering the analysis to the predicate conviction, which an individual has had an opportunity and incentive to contest and has been subjected to procedural protections, this court avoids due process concerns. As a general matter, the same constitutional test should apply for civil plaintiffs and criminal defendants. But if this court is inclined to consider conduct beyond predicate convictions, that scope must be more limited in the criminal context. Unlike a civil plaintiff who is seeking the prospective relief to possess a firearm in the future, a defendant is simply arguing that the indictment must be dismissed because he cannot be punished for his past possession. That includes a natural temporal limitation, the time of possession. Under any scope this court adopts, it should be limited to that pre-possession timeframe. These limitations also reflect that in the criminal context, a defendant's liberty is put at stake. This triggers both procedural and constitutional protections, which a broader approach threatens to erode. Finally, 925C does not fix 922G1's constitutional problem. It is a nascent discretionary regime that was not available to Mr. Bose and has been on ice for the last 30 years. It is not a prerequisite to a constitutional challenge. That the government may, at some point in the future, restore some firearm rights does not mean the government could take those rights away in the first place. That question, which is the question before this court, whether 922G1 can be applied consistent with the Second Amendment, is precisely the question this court should resolve. That means that this court should hold that that inquiry should be limited to predicate convictions, despite what 925C's eventual criteria might be. 925C is a matter of executive grace. It is akin to a pardon. Construing the constitutionality of a statute has long been the province of the courts, and the courts holding today has no impact on that discretionary regime. This court should continue to uphold as applied challenges to 922G1 and direct an inquiry tethered to the predicate conviction.  Applying, just considering the test that you just gave us about considering the amount of time between the individual's predicate conviction and the firearm possession underlying his 922G1 charge, why shouldn't we then consider the conduct that occurred in that sort of window, as it were? Other conduct. Yes, Your Honor. So, as a starting point, it should be tethered to the predicate conviction. And so the predicate conviction is all a court should be considering, because that is what G1 prohibits. That means the court should not be considering other conduct following that predicate conviction. What about the facts of that conviction? So, Your Honor, our baseline approach is that courts should consider the elements of that predicate conviction to see whether they involve physical violence and not the underlying facts. We should look to the elements. Does this involve physical violence? And then we could move on to the other two factors in our test. Why not look at the facts for the same reason we have the categorical approach? The categorical approach is not the perfect solution to everything, I understand. But it does help. It helps us avoid some of those constitutional problems that are created when we are looking to underlying facts about a possibly very old predicate conviction. And so that's why, at least as a baseline matter, we would propose an elements approach. If we look at the time elapsed, haven't we already moved beyond that? Now we're looking at a type of post-conviction information, if not post-conviction conduct. I understand that concern, Your Honor. But, no, what we're actually looking at when we look at the time that has elapsed, we are baking in the idea that Rahimi teaches us that there is a problem with lifetime disarmament. So this allows the court to assess when can the predicate no longer form a basis for disarmament. When has that gone too stale to justify the physical violence finding at that predicate point? And when has that elapsed? So it's less of thinking about what's happened or not happened in the intervening time frame, but rather when has this predicate gone stale? So you're saying the court can't consider the individual's conduct other than the predicate offense? That's it. Art, stop. Yes, Your Honor. But you can consider the conduct that went along with the predicate offense. A disorderly conduct, a conviction where there was actually an assault. No, Your Honor. As a baseline matter, our approach would be that the court look to only the elements of the predicate offense. So what is the element that is going to tell us about physical violence? Because, you know, as you heard from your colleague across the aisle, the Supreme Court's been struggling with the due process concerns that go along with the crime of violence for a long time. Are we looking to use of force? No, Your Honor, and we would not be proposing some sort of use of force inquiry or matching or, you know, least culpable conduct. It would be looking to, okay, do the elements involve physical violence? Why just the elements? Let's say a defendant pleaded guilty to disorderly conduct and allocuted or said in the plea agreement, yes, I socked the officer in the jaw with a fist. Where's the constitutional problem with considering that where it was either proved to a jury beyond a reasonable doubt or admitted by a defendant? So, Your Honor, two responses. I think, first, there are concerns still with that old predicate that the categorical approach seems to work around. But, Your Honor, I do understand those concerns, and I will make clear that our backup approach would be that the court could consider a reliable set of underlying documents about that predicate conviction, which would include things like the charging document, a plea call. Shepherd documents. Essentially, Your Honor, yes. Conviction plus Shepherd documents. Why not also look at the person's entire criminal record since that also would include things to which he either was either pled or was convicted? Your Honor, the court should not look to the individual's entire criminal record because at the end of the day, we are applying 922G1, which only prohibits based on a predicate conviction. We're just talking about the delay, though. And there's a big difference between the delay that is crime-free for 15 years and the delay that is punctuated by a new crime every two years. Your Honor, if one of those was a qualifying predicate conviction, of course, that would be considered in the analysis. But at the end of the day, the statute prohibits. It's a status crime. So this kind of challenge does not map on perfectly. But at the end of the day, it is a status crime. Someone with a predicate conviction cannot possess a firearm. So ultimately, we are looking to, as applied to that predicate conviction, does it fall within or does it fall outside of our regulatory tradition? That categorical approach just seems inconsistent with an as-applied challenge. Your Honor, I think so. That is just one part of our test. And I do think an as-applied challenge does not mean, and I don't believe the government has cited cases to describe that, that means you can consider everything about an individual. What we are looking to is the statute being applied, 922G1, in context of the Second Amendment in our historical tradition in 2026. And so we really are, although we're calling it, it is an as-applied challenge, that sort of collapses under 922G1. We're really talking about that predicate conviction and what we can look to about the predicate to assess physical violence with a firearm. But this statute does make, it's got lots of elements, and one is being a felon and the other is possession. Is it your position that the court couldn't consider the circumstances of even the instant possession? And I'll be more concrete. Let's assume the qualifying predicate is mail fraud. The underlying facts of that mail fraud is really an insurance scheme with an intentional fire, the person wanted to kill the building, people in the building. But the government, for whatever reason, made a deal, conviction for mail fraud. A period of time passes. I'll even guarantee you, completes his sentence, supervised release. Law enforcement gets information that there's another crime in which this individual is suspected of engaging in. Search warrant is executed at the house. They go to the location to search for whatever they're searching for, for that other crime. But they happen upon an arsenal of weapons, a target list, a dossier on each one of the targets, and a plan to meet up with the intended targets. Are you saying that in this dangerous analysis, a court could not consider that to allow that prosecution to proceed? Yes, Your Honor. And what is the basis for that? Because you're putting your everything on the predicate offense. So, Your Honor, on top of the predicate offense, it also becomes the question needs to be at the moment the individual possessed the firearm, did he pose a physical danger as evidenced by the predicate conviction? Why can't it be as evidenced by the possession that I've just described to you? Your Honor, because I would say, first off, we are in the predicate-based approach. That also would raise concerns about unadjudicated conduct, facts in police reports being used to justify punishment under the Second Amendment. The question is, even if it's about the instant offense, I'm not talking about even any other conduct, simply two points in time, the predicate offense and the possession of the instant firearm that is the subject of the indictment. He's on notice of that. He's gotten discovery concerning it. Why is that off limits? Your Honor, I believe it is off limits because the fact of the conviction is whether at that moment he could be disarmed consistent with the Second Amendment. And so these unadjudicated facts are surrounding circumstances. At that moment, could the government file an indictment and say he does not have a Second Amendment right to possess? And in that moment, is his possession illegal? That is ultimately the question. Circumstances surrounding that don't actually bear on that question. I assume he's also going to be charged with attempted murder. If I'm putting that aside, I still so if I'm understanding your position, it's at the moment that the criminal process is concluded. He has this are our offender here as committed as could finish his custodial sentence and any collateral consequences like supervised release. Is it is it your position that at that moment, the Second Amendment right is restored and there need be no further inquiry? No, Your Honor. Why not, though? Because I think that's what I hear you arguing. But then maybe not making that full connection. Yeah. Your Honor, that is not right. At least we are trying to operate within the range to framework if that's what we're working under with this physical danger inquiry. And so our argument would be right after someone has finished serving their sentence. They're out of the supervised release category category. If they were then found with a firearm, the court would conduct this constitutional analysis to resolve whether or not a motion to dismiss would be granted. So we are somewhat different than a civil plaintiff where we would be raising a constitutional defense. And in that moment, the court would then assess, you know, our test. OK, this was the predicate conviction. This was the sentence and would be able to resolve the constitutional question. I just don't understand why you're foreclosing a wider inquiry at that moment. The categorical approach is over-inclusive and under-inclusive. Wouldn't you agree? Yes, Your Honor. And if you're asking us to look at only elements and not the true facts of the predicate conviction, won't it be the case that some people would be convicted of something that is, by elements, a violent crime and make them a prohibited person? But there could be circumstances where they come forward and show, look, this was not your typical aggravated assault or whatever, your typical assault, et cetera. They might be able to show true facts that show that they're not a prohibited person. But you're throwing that category of cases away? Your Honor, I wouldn't say we're throwing that away. I do think, as a baseline matter, our suggestion is right with the good and the bad of looking to the elements. That is our first approach. But, as this Court suggested, if a court was inclined and needed to learn more, then the court could look to those documents that everyone has agreed to and are judicially ascertainable. So I think, baseline matter, right, we do think the elements only approach, but we understand that this Court has not always loved applying the categorical approach. And the district courts may say, we need to look at a reliable set of documents to learn more. Could you look at the pre-sentence report prepared by a federal probation officer and take the content of that pre-sentence report into consideration? You could not. Why is that not a reliable document? At least in the motion-to-dismiss context, when we are talking about when these challenges are being raised, the pre-sentence report is not even prepared. That's an after-the-fact document. I think His Honor was talking about the predicate offenses pre-sentence report. Oh, apologies, Your Honor. Which would be available. So I do think that poses difficult questions because at least a defendant, let's say, back at the predicate offense phase would not have thought about or had an opportunity to actually know that those facts would come into play later, much like the issues that are raised when discussing the categorical approach. Sure they would. That report goes into the calculation of the sentence, the calculation of the designation by BOP, so they don't notice that this report is going to be with them forever. That is true, Your Honor. But in that report, a defendant may describe things about his own life, about his history, that he's using hopefully to get maybe a good designation at a helpful facility for him. There are things that he's not going to think down the line will be used to prosecute him under 922G1. So I do think that is a much more suspect document than the other sort of reliable, underlying documents we're talking about. So you would exclude offenses like drug trafficking? Your Honor, as a baseline matter, drug distribution offenses do not involve elements of physical violence. Or stalking. Yes, stalking similarly probably would not involve physical violence, but the court could then look to the sentence that was imposed as well as this temporal duration. So those may be edge cases, but we do have a way, our test, to kind of accommodate these outliers.  Hold on, Judge Phipps was next. Thank you. You know, just my baseline understanding is in order for a Second Amendment regulation in this context to be constitutional, there must be proof eventually of, you know, unusual dangerousness. If that's the case, does an allegation of unusual dangerousness belong in Section 922G1 indictment? Separate from the statutory elements, it's almost like there's this new constitutional element for a 922G1, unusual dangerousness. Does that belong in the indictment? And I guess my follow-up is, if so, why isn't that fundamentally a factual matter? Your Honor, that is a difficult question, but I believe that our approach would not require that in the indictment. That the predicate alone, which encompasses these factors, could be in the indictment, and that that would not need to actually go into the indictment. If it was required in the indictment, then you'd kind of be on shaky footing to say, then there couldn't be further factual development, right? Your model wouldn't work if allegations of unusual dangerousness were required as a constitutional, not a statutory element, but a constitutional element. If they're required in the indictment, then that's an open fact that the government bears the burden of proof on later, and your model wouldn't work if that's required in the indictment, right? So I think if that's required in the indictment, we would be opening up potential challenges that that would then need to go to a jury. And so, yes, I think if that is what the government wants to suggest, that everything goes, we are opening the floodgates, and I think people will come before you and argue that needs to go to a jury and be proven. And so, yes, our approach does not embrace that, but rather tethers to the predicate conviction. But isn't that different than Old Chief? Wasn't it in Old Chief that whether we were going to prove it? Didn't it all play out with lawyers were like, we've got to sever this? So you wouldn't really want all that dangerousness material from the predicate offense really being adjudicated by the jury, right? As a matter of a strategic decision on behalf of your client. Your Honor, that is correct that we would not, and I think Old Chief recognizes those facts should not be going before the jury or a sentencing judge, and I agree that the government's approach essentially opens that up and that everyone would be hearing about. That is not the approach we're proposing. That is correct, right? Our proposal avoids that concern of having to go to a jury. It limits it to the legal question, to the predicate offense, as also not to, you know, leave the sentencing judge with a jaundiced eye about our clients, right? It is limited to that predicate conviction and those facts, whatever they might be that you want to look to that are very limited about that predicate conviction. But yes, we would not, we wouldn't welcome that. But if the government wants to, you know, do that, then we would put them to their burden and say this needs to go before a jury. Judge Freeman. I just want to narrow down what you mean by an element of, an element that involves physical violence. I assume you mean the use of physical violence. What about the attempted use of physical violence? Your Honor, I think that would be more difficult. I think in that case, you know, attempted use of physical violence probably is more likely to fall within the regulatory tradition, but knowing we could look to our other two facts. But I do think in that instance, you know, initially it would be helpful, I think, right to look. Murder is out. Certain of these offenses are already, or I guess within our regulatory tradition. Attempted would be a closer call, and I think that's why we have our two other factors a court could look to. And threatened use of physical violence. A threat. No, Your Honor. A threat is insufficient. We believe that is not actually involving physical violence. A threat can be made indirectly. It could be made on Facebook. The person doesn't even need the ability to carry out the threat, which is probably how I would distinguish it from the attempted context. And is offensive touching considered physical violence? That is a difficult question. I think the sort of physical violence that Rahimi and other courts have talked about is interpersonal physical violence. And so I think if there was some sort of offensive touching, that may fall within that category. I will also note. That'd be nice to look at the true facts. Yes, Your Honor. And so once again, my fallback position is that courts, if this elements only approach is not selling you, then yes, that you could go ahead and look at those reliable documents to see, okay, what did this actually involve? So that you could answer that first question, which I understand is a difficult one. Can I go back to Judge Phipps and Judge Schwartz's question for a minute? He said that the government's approach would open up subsequent development of facts. But I'm not sure that that's right. If I heard Mr. Suri correctly in the Williams argument, he's saying we're allowed to rely on categorical definitions. Rahimi says Congress can make those categorical distinctions. So we can decide categorically that a felon, no matter what kind of felony, should be disarmed because he's presumptively dangerous. Now it's your job to show that you're not dangerous. And the way we'd like to channel you to do that is in 925C. You can leave that last part aside for a minute. But what about sort of the sequencing? They can just make a categorical decision. So first, Your Honor, I believe the court did reject that in Range 2. And I do think the government is trying to somewhat rewrite Range 2 here, right? The government in Range 2, this court did find that 922G1 is not constitutional in every application. And now it is the government's burden to come forward and demonstrate that an individual falls within that historical regulatory tradition that was identified. And so I do not believe what the government has said, that there's this presumption and you just need an opportunity to rebut. I don't believe that is supported by any history. And I actually think that's rejected in Range 2. Thank you, counsel. We'll hear you on rebuttal. Thank you, Your Honor.  May it please the court. I'd just like to make a couple of points before turning to the court's questions. In William's argument earlier today, I tried to persuade the court that Section 925C was the appropriate mechanism for individuals to use to overcome the presumption of dangerousness created by a felony conviction. Whether or not you agree with me on that, whether or not you think there should be an opportunity to bring civil suits as well, I would hope the court would at least agree that the Second Amendment does not require that individuals be permitted to raise those kinds of defenses through affirmative defenses in criminal cases. The idea here isn't that, again, that there is some sort of procedural bar that prevents a criminal defendant from raising a Second Amendment defense. Instead, the idea, again, is that all the Second Amendment requires is a reasonable opportunity to overcome the presumption of dangerousness. And even if you don't think Section 925C is good enough, a civil suit certainly is good enough. And if that option is available, then there's no Second Amendment violation, and so any claim that's raised in the criminal case would necessarily fail. I'd like to give a couple of quick analogies to show that this is not an unusual position at all. The first is from the Second Amendment context itself, and it's carry licensing, which is something that the Supreme Court approved in Berlin. Now, carry licensing is a mechanism through which someone prospectively comes to the government and shows, I'm qualified to carry firearms. You wouldn't allow someone who chose not to obtain a license to carry a gun anyway and then, when caught, to defend himself in the criminal prosecution by saying, I would have been eligible for a carry license if I tried, but I didn't bother. It is necessary to go through that administrative process, or if the administrative process isn't good enough, to bring a civil suit, as in Bruin, but it wouldn't be acceptable to raise it as a defense in a criminal case. The second analogy to show that this is not unique to the Second Amendment, similar structure arises for other constitutional rights as well, is in the context of the First Amendment and the self-incrimination clause. There might be contexts in which a government form asks a question that would violate either some First Amendment right or some self-incrimination right. Now, what the Supreme Court has made very clear is that in that context, what you're supposed to do is openly decline to answer the question. Tell the government that the government doesn't have a right to ask that question and challenge that either in court or administratively. What you don't get to do is lie and then, in a criminal prosecution, raise as an affirmative defense that the question was illegitimate. So it's the same kind of structure that we think works here, that is, that the appropriate avenue through which to assert these rights is some sort of prospective action, administrative or civil. Now, if you don't accept all of that and you do think that these kinds of issues still need to be litigated in the criminal context, then we would suggest that the appropriate approach is to consider all the relevant factors that bear on a person's dangerousness. The most important of those will certainly be the nature of the offense, not just the elements, but also the conduct underlying it. Other relevant factors will include the person's criminal record as a whole, as well as the amount of time that is elapsed. And other facts might be less relevant, but there's no reason in principle to exclude them. Now, I heard my friend advocate for the categorical approach and potentially a modified categorical approach, counting Shepard documents. I just remind the Court that we're interpreting the Second Amendment here, not the Armed Career Criminal Act, and that the interpretation of the Second Amendment must be based on history and tradition. I'm not aware of any founding era basis for distinguishing. I think counsel's argument. Oh, sorry. Just one last point. I'm not aware for any founding era basis for saying that you have to limit your inquiry to Shepard documents. And with that, I'll welcome the Court's questions. Well, let me start off by just saying that I think what I've heard you say is that we should be looking at what we can look to and maybe should look to post-conviction conduct. But does that seem to lack meaningful limits and, I mean, really raises due process and fairness concerns? What is the limiting principle here that would avoid those kinds of constitutional concerns? The most important limit is, of course, that it has to be relevant to the dangerousness inquiry. We're not trying to look at whether this person is a good person or a bad person in some abstract sense. We're trying to determine is there a danger that this person would misuse a firearm. But I'd give a few additional responses about those due process concerns. Of course, if you accept my frontline argument that there's no reason to conduct this inquiry in the criminal context in the first place, then the due process concerns go away entirely. Everyone knows if you're convicted of a felony, you can't possess a gun unless your rights have been restored, either through a civil suit or the Section 925C process. In addition, I think it's important to remember that this is not an element of the crime, not even a constitutional element of the crime. It is an affirmative defense, and I'm not aware of any decision from the Supreme Court saying that the fair notice requirements extend beyond elements of the crime to affirmative defenses. And this is not some unique rule for the Second Amendment. Constitutional defenses are normally considered affirmative defenses and not elements of the crime. For example, if there's a campaign finance violation that's been charged in an indictment, you wouldn't expect the indictment to include allegations about how the campaign finance statute serves a compelling interest in preventing quid pro quo corruption. Let me make sure I understand you on the civil suit requirements. So you're basically saying that someone who is a convicted felon, if they want to be in a position, if they get caught with a firearm to claim a Second Amendment challenge, they would have had to have filed a civil suit to get their firearm rights back before they get caught with a firearm. That's right, like Mr. Rage did. Okay. Assuming you're picking up on some of your earlier remarks, your concept of a categorical disarmament, which then needs to be rebutted by a showing of a lack of dangerousness, assumes that the ability that draws from the founding era practice to make categorical exclusions is predicated on a notion of dangerousness. And that's how you're connecting it to the sort of disloyalty crimes that you talked about. Yes, I think that there is a limit to the legislature's categorical authority. We would not say, for example, that a legislature could say that the category of all men is presumptively dangerous and any man who wants to own a gun needs to come forward and show that he is not dangerous. And the way in which we would draw the limits of what types of categories are and are not acceptable is primarily by looking at post-ratification history. Again, post-ratification history can't establish the principles, but they can show how the principles should be applied to particular circumstances. We do have a long tradition, admittedly not going back to the founding, but a long tradition in this country of treating felons as presumptively dangerous and presumptively dishonorable. That's the tradition we'd rest on here. When I nearly interrupted you, it's because you said we're interpreting the Second Amendment. And I thought that counsel's argument for the categorical approach wasn't based on the Second Amendment, but it's based on the way that 922G1 is written, right, because it talks about a person who has been convicted of a court-punishable, you know, a felony. So how do you respond to that? I respond to that by pointing out that 922G1 must be read alongside 925C, just as a statutory matter. And if you look at 925C, what Congress said about how someone can show that his rights should be restored is you look at that person's record and reputation, not just at the elements of the predicate offense. So if you're looking at what Congress wanted, Congress wanted all the relevant facts to be considered before deciding whether an exception to 922G1 should be made for a particular felon. So regardless of whether you look at it from a constitutional perspective or a statutory perspective, the categorical approach here doesn't make sense. What's that mean about the constitutionality of G1 before 925C was enacted? Well, before 925C1 was operative again. Or better yet. Yes. I think the statute was unconstitutional in many of its applications as this Court determined in range. We're not contesting that here. We accept that precedent. And therefore civil suits were necessary at that time. And even if you think they're still necessary, the civil suits are adequate to resolve the constitutional problem. There's no reason to determine that as applied defenses must be raised in criminal cases. So as I understand it, you believe that unusual dangerousness is an affirmative defense to a 922G1 conviction, not something that the government bears the burden of proof on. And I'm just wondering, is there any other instance in American law where there is an administrative exhaustion requirement imposed on a criminal defendant in a criminal proceeding before they assert an affirmative defense in that proceeding? I've already given the example of the carry licensing in the Second Amendment context. I've given another example of answering the question. I know those are examples, but are those examples of prerequisites to the assertion of an affirmative defense in a criminal case? I understand those might be prerequisites to something else, and you're trying to analogize those at one level to this. But I'm looking at it. As you read it, it seems to be a prerequisite to the assertion of an affirmative defense in a criminal case. You cannot raise as a criminal defense in a criminal case that the question the government posed was something that it had no right to pose, if you're prosecuted for lying in response to the question. So, yes, I'll give another example. Parade permits required by the First Amendment. In some contexts, individuals might have a request to conduct a parade. That's a First Amendment-protected activity. They'd have to go through the appropriate administrative process to obtain the permit. And as long as that process is available, I don't think the person could trespass or conduct an unlawful parade. All right, let's stick with that analogy. Let's assume that 100 people who are marching down a street are arrested for unlawful assembly, and the basis of that arrest is that they didn't get a permit. When they get indicted for that offense, why couldn't they move to dismiss it by arguing that the last 2,500-person gatherings in that same town did not result in an arrest for unlawful assembly, and none of those people got permits? If I understand the question correctly, that raises a question of discrimination between different types of litigants? Yeah, the indictment's invalid because the permit requirement is a parchment barrier that's not only honored in the breach, but never honored, except for this one time where these 100 people got rounded up and were quite surprised to see when they called their friends who believed in other causes, they said, no, you don't need a permit here. Yeah, so that's a selective prosecution claim, and we're not denying that that could be brought. But what couldn't be brought, even in your hypothetical, is a claim that you have a First Amendment right to march there, and the government has denied it to you. The government would respond, well, no, all you had to do was ask for a permit, and we would have granted it. And at that point, I don't think you can say that there's a First Amendment violation. Let's go back to the Second Amendment line. I'm still struggling with this idea that you can't move to dismiss the indictment because you have to pursue the administrative process. And what I have in mind is a felon, equivalent, under 922G1, who failed to return hundreds of dollars of library books under Pennsylvania law. It's one of those examples that I mentioned in the footnote in Bindrup that you're probably familiar with. So that person is guilty of that preclusive misdemeanor under Pennsylvania law. And 10 years later, that person has a gun and gets arrested and gets charged under 922G1. And it's your argument that that person can't defend against that indictment by a motion to dismiss by saying, I never was a prohibited person. And the reason I never was a prohibited person is because the notion that failing to return hundreds of dollars of library books is a felony under Second Amendment jurisprudence is utterly absurd. That's your argument? That is the argument. And I appreciate it's uncomfortable because there are going to be some. It's not uncomfortable. It just seems absurd. Well, let me make it seem less absurd then. If you have general rules, there are going to be edges that or corners that don't quite fit. That's the price of having a general rule. Now, the Supreme Court has specifically said you don't need to apply levels of scrutiny. You don't need to do a narrow tailoring analysis in the Second Amendment context. The type of argument that you've described, that there will be some types of offenses for which this general presumption of dangerousness doesn't make sense, might well be a very strong argument under a levels of scrutiny approach. It isn't the appropriate analysis under the Second Amendment's historical approach. Mr. Suri, I think my colleagues are troubled by something because it seems like this is an element that is required for the crime in the first place. It's not just a defense in some situations. United States versus Lopez. The Supreme Court's disposition didn't say, oh, well, we're remanding and we'll let the prosecutors prove up that this particular gun moved in interstate commerce. They said the statute is missing, the moving in interstate commerce, even though most guns have moved in interstate commerce, but the statute was defective in the way it was written. And I think my colleagues are concerned because we're resisting your insistence that simply putting the word felon in 922G1 is enough to satisfy all Congress' prima facie needs to do, I entirely agree that the word felon should not be what the court focuses on. What the court should instead focus on is the duration of the maximum punishment, more than one year of imprisonment. And the reason the court should focus on that is that's the approach the Supreme Court has used when interpreting other constitutional provisions to determine what types of crimes are in or out. For example, the grand jury clause refers to infamous crimes. That's defined as crimes punishable by more than a year of imprisonment. The jury trial clause doesn't apply to petty offenses. That, the Supreme Court has interpreted to apply to crimes punishable by six months or more of imprisonment. And the court has had a very practical reason for adopting that approach, which is it's very hard for courts to go through the thousands of crimes that legislatures have created and determine exactly which ones are serious and which ones are not. We have traditionally used the maximum punishment as a proxy. Yes, it's an imperfect proxy. There are going to be some crimes, like the ones Judge Hardiman mentioned, where the proxy doesn't make perfect sense. And the way we deal with that is by having a safety valve on the back end, by allowing an individual to come in and rebut the presumption. Let's assume they're going to rebut it in the courtroom, that we're not going to impose some obligation in the criminal context to allow that to be erected. What could be considered by the district court in that circumstance? The district court could consider all relevant facts bearing on the person's dangerousness. We don't see any principle basis under either the Second Amendment or the statute to limiting the court's consideration to some subset of those facts. Why wouldn't that present some Sixth Amendment problems, Apprendi-type problems? Well, again, if it's not an element of the crime, if it's just an affirmative defense that the individual has raised, then it doesn't need to be charged in the indictment. It doesn't need to be sent to the jury. It doesn't need to be proved beyond a reasonable doubt. So under your scenario, all means all, the facts underlying the predicate offense, behavior since the predicate offense, conduct at the time of the arrest of the instant firearm and the finding of other material, even it be charged under a different crime. All of it's in. Everything is in if it's relevant. That may be relevant for Second Amendment purposes. But when we're in the criminal context, aren't we concerned and limited by the due process implications and the implications for knowledge, notice and knowledge of a defendant of what is and isn't prohibited? It's challenging enough for a criminal defendant to anticipate what a court is going to say is the kind of offense that's going to match up with a historic analog. If we throw into that all conduct, all intervening conduct, how could the statute be considered not vague? Could I answer that by drawing an analogy to the Armed Career Criminal Act's residual clause, which was involved in the vagueness decision Johnson against the United States? Now, in that case, the court determined that what was vague was an ordinary case approach. That is to say, instead of looking at the particular circumstances of an individual, you looked at the crime in the abstract and determined whether, as a general matter, that crime tends to lead to violence. And that approach, the court thought, was vague. What the court said very clearly in its opinion was not vague, was an approach grounded in real world facts. And I think that just illustrates a point about vagueness here. It's true. You are considering a lot of facts. But ultimately, if you're making a real world judgment about whether this person is dangerous, that's a routine factual judgment that courts make all the time. I'm not sure I agree with that reading of Johnson. I mean, the court pointed out that there will be instances where it's clear that something does involve violence. But nonetheless, it concluded that the clause itself was unconstitutionally vague. Because it required courts not to look at the real world facts of what this defendant did, but rather abstractly at what burglars generally do or possessors of sawed-off shotguns generally do. And that, the court found through experience, was a much more difficult inquiry than just looking at this individual and here asking whether this person is dangerous. I also note this is actually a familiar inquiry that courts conduct in criminal cases. Under the bail statutes, for example, courts are going to have to ask, is a person a danger to the community before deciding whether to grant the person bail? Similarly, in making sentencing decisions, courts will judge a person's dangerousness, that is to say the risk that, in a broader sense, that he will commit crimes in the future before determining the appropriate sentence. We don't think the Second Amendment inquiry is too different from those. I know you're out of time, but I wonder if you might just address for us the relief and the difference in the relief that the government is talking about in Williams v. Bust. In this case, the Second Amendment claim should fail on any standard, because even if you look just at the predicate crime, terroristic threats, that is clearly a sufficient basis for disarming Mr. Bust. In Williams, we would be satisfied either with a remand to the district court for consideration of the new circumstances that have arisen under Section 925C or with holding the case in abeyance while giving Mr. Williams an opportunity to file such an application. Counselors, going back to one of your initial points, you said that we shouldn't permit an as-applied challenge here because there had not been a prior civil action. Doesn't that somewhat conflict with your concession that we can look at the elements of conviction here and conclude that the challenge was not appropriate? What you initially described, Judge Fischer, was my starting position, but I had moved to my fallback position by the time I had given the answer. That's what I thought. You said as a matter of statutory interpretation, exhaustion of 925—you don't like the word exhaustion— but utilization of the 925C process is necessary. Is it your position that it's necessary for all of the firearms disabilities in 929G? I think that it is necessary, as far as I can say standing here, yes, for all of them. There might be some of them for which, even without 925C, the relevant provision is constitutional anyway. For example, the provision disarming fugitives would be constitutional regardless of whether 925C existed, or the provision disarming illegal aliens who, in our view, are not part of, quote, the people— What about G8, where someone has a firearm disability because of a temporary restraining order? How would they be required to go through either the 925C process or the declaratory judgment process before challenging that indictment? The individual would not need to go through the 925C process in that context because the restraining order already contained an individualized determination, and to the extent that the facts have changed since the state judge made that initial determination, the logical place to go would be to go back to the state court and ask it to modify the restraining order rather than— But if they wanted to challenge the specific facts that were allegedly causing the disability under G9, they wouldn't be able to do that in a motion to dismiss the indictment? That would be prohibited, I believe, under a separate Supreme Court decision. I think it's called Lewis, holding that there are no collateral challenges to the predicates that are permitted in Section 922G prosecutions. Okay, counsel. Thank you. And we'll hear rebuttal. Thank you. Thank you, Your Honor. Thank you, Your Honor. Counsel, before you go to 922G1, can we talk about J? Yes, Your Honor. There was a historical tradition prohibiting the possession of stolen goods dating back to the founding, correct? Yes, there was a tradition of that. All right, and Mr. Boast had a stolen firearm, correct? That was the allegation at the motion-to-dismiss phase, was that it was a stolen firearm. All right, so where are you going with that? Is your argument that we have a long historical tradition of prohibiting stolen goods, but there's an exception for firearms or something, or a Second Amendment exception where stolen firearms vitiate somehow all of the laws on the books prohibiting stolen goods? No, Your Honor. First, just to make clear, we're talking about a separate 922J analysis, which we have not pressed as much today. But no, Your Honor, we would say that this, at most, would be considered under Step 2 of the analysis, and we would look at historical tradition. I believe that would need to be explored further, but we would look at the founding, whether this is something that would be punished with the how and the why, and so that would be the analysis that would be done. In your opening remarks, you said that the 925C process is a matter of executive grace, not akin to a pardon. I think your friend on the opposing side would say it's different from a pardon because there's a judicial review provision. What do you say about the availability of judicial review and whether that distinguishes 925C from a pardon? Your Honor, I don't think it. It distinguishes in the fact there's a manner for judicial review, but that is a judicial review of the administrative decision. That is far different from actually being able to go in and challenge the constitutional right. It would be a judicial review of a discretionary decision by an administrative body, and that is not an adequate substitute, especially in the criminal context, which my friend on the other side is suggesting, that they could hail someone into court and threaten them and plan to prosecute them, and that they could not raise a challenge and could not raise a defense under the Constitution. That is not an adequate substitute, even if they could come back to court later. Do I understand correctly that the relief you see following from a successful challenge is simply dismissal of the indictment, not an entitlement to possess firearms going forward, so that things like being unable to purchase from a federally licensed firearms dealer, that that would remain in place? Your Honor, yes. All we are asking for is dismissal of the indictment here. It is somewhat of a different relief than what a civil plaintiff is requesting, which is to have the disability lifted or to possess a firearm at some point in the future. We simply would be requesting the dismissal of the indictment because he cannot be prosecuted consistently. Because he was never a prohibited person? Yes. All right, on these facts, why isn't Bost a prohibited person? Yes, Your Honor. So the predicate conviction is terroristic threats, which is a Pennsylvania misdemeanor. It encompasses a wide range of conduct. It was 18 years ago that Mr. Bost was sentenced in that case. Falls for a sentence of more than one year. Isn't that all you really have to look at? No, Your Honor. In this case, we need to look to the sentence that was imposed, which was four years probation, as well as the fact that this encompasses many different conduct, and it was 18 years prior. The fact that it's now been 18 years, we know that is far too long, regardless of the temporal timeframe this court adopts. 18 years is far too long for Mr. Bost to be disarmed. That sounds like a concession that it was a prohibiting offense at the time, but there's been sufficient lapse where he's been redeemed. Is that your argument? No, Your Honor. My argument is not. I would say that at the moment that that is necessarily a prohibited offense. But I think that question, which could be looked to by the fact that Pennsylvania misdemeanor involves many things, and it does not seem to involve physical violence, so it probably wasn't initially. But even if the court does not agree with me on that, the amount of time that has lapsed has taken Mr. Bost outside of the categorical basis for disarmament. But we're supposed to put blinders on on what happened between the time of conviction and the time of the indictment in this case, correct? Your Honor, I wouldn't view it as blinders, but we are asking for a predicate-based inquiry, and I would note that that also- You could have it both ways. But I would also note, right, you also couldn't consider that Mr. Bost became a priest or something of that nature, right? So we also would not be putting, we would say be putting on blinders to those facts as well, because what we think that 922G1, Bruin, and Rahimi teach us is that we look to the challenge regulation and the historical analog. And our challenge regulation is G1. G1 is a status-based offense based on a predicate conviction. Just to go back to something that Judge Hardiman had talked about with the stolen firearm, the government suggested that stolen firearms are not in the common use by law-abiding citizens. What do you think about that? I disagree. Just as a threshold matter, Your Honor, I don't believe that should play at all into the G1 analysis. What G1 prohibits is possession of a firearm if you have a predicate conviction, not a stolen firearm or anything of that sort. I also believe we're under the text. It is a handgun, which Bruin says is protected. And so we pass step one. We're in the text. And I don't think even at step two, it should not be considered at all in the G1 analysis. G1 is about a predicate conviction, and that's what we're focused on here. Okay. Thank you, counsel. We thank counsel for their excellent arguments and briefing in this interesting case. We'll take the case under advisement. We'd like the parties to order a transcript and split the cost. And we'd also like to thank all of the amicus who submitted briefs to us, and in particular, the court-appointed amicus, National Association of Criminal Defense Lawyers. And we'll ask the clerk to adjourn court. Thank you.